JAMES THOMPSON AND CHARLES THOMPSON, RESPONDENTS, *v.* CHARLES W. DATER AND JOSEPH H. KNIGHT, APPELLANTS.

*Attachment — a wrongful act or intent essential to its issuing.*

Evidence that debtors are, and for some months have been, insolvent; that they have ineffectually tried to sell out their property and business; that they owe largely certain banks; that they expected to sell their property; that they refused to say what they would do as to the plaintiffs' claim; that they were not ready to say what steps they would take in the disposition of their property among their creditors, except to state that they would not pay their debts *pro rata,* does not justify a creditor in obtaining an attachment on the ground that the debtors

have assigned, or are about to assign, their property with intent to defraud their creditors.

Attachments are not to be granted on beliefs and suspicions; they operate to give an advantage to one creditor over others, and some wrongful act, or the evident intent to do some wrongful act, must be shown to justify them.

APPEAL by the defendants from an order of the Rensselaer County Court, entered in the office of the clerk of Rensselaer county on the 21st day of April, 1890, denying the defendants' motion to vacate certain warrants of attachment upon the same papers upon which said warrants were granted.

*Nelson Davenport*, for the appellants.

*James Lansing*, for the respondents.

LEARNED, P. J. :

This is an appeal from an order refusing to vacate on the original papers an attachment against the property of defendants. The grounds recited in the attachment are that a cause of action exists on breach of contract for sale of goods and on a promissory note, and that defendants have assigned, disposed of and secreted their property with intent, etc., and are about to assign, etc., with like intent. The action, therefore, is not for injury to property, but for breach of contract in not paying a debt.

The question on the appeal is whether there was evidence justifying the holding that defendants had assigned, etc., or were about to assign, etc., with intent, etc. One of defendants on the 14th of February, 1890, said that they were hopelessly insolvent, owing $20,000 and having assets about $10,000; that they had been insolvent for six or eight months and had known their insolvency since October first previous; that defendants then owed the Manufacturers' Bank $8,000 and the Mutual Bank $2,500; that defendants were trying to sell their property to one Patton, expecting to receive about $10,000; that they had no proposition to make as to plaintiffs' debt. Said defendant refused to pay plaintiffs' debt or secure it, or to promise to pay it from the sale to Patton, and stated that they would not apply their property to their debts *pro rata*.

The affidavit avers that Knight, one of the defendants, had been a partner of another firm until a short time before the commencement

of this action, when he assigned all his interest therein to his wife. That defendants had tried to sell their property and business to one Cleveland, but could not, for reasons immaterial on this motion.

An affidavit of one Stickney states that he was, until June 1, 1889, in the employment of defendants; that while he was with them the average stock in manufactory and lands was about $5,000 or $6,000 worth; that he examined their stock about February 14, 1890, and found less than $2,000 worth. From these statements of Stickney the plaintiffs believe there has been a great and sudden change in the amount of stock. The plaintiffs' affidavit states that he is informed by said Stickney that this change from $5,000 to $2,000 was within two weeks prior to February fourteenth. Stickney's affidavit, on the contrary, shows that it occurred between June first and February fourteenth, eight months and a half. This shows the difference between hearsay and sworn statements.

There is nothing in the least suspicious in the diminution of a stock from $6,000 to $2,000, during a period of over eight months, in a concern which is not successful in business. Such a circumstance, standing alone, in no way tends to sustain an allegation that the defendants have disposed of property with intent to defraud.

There is no other evidence of any transfer of defendants' property, except that it is stated that one of the defendants had sold his interest in another firm to his wife. What such interest was worth is not stated; what he received is not stated; whether there was any value whatever in his interest after payment of the debts of that firm is not stated. There is no evidence that that transfer was fraudulent. Therefore, the allegation that defendants had assigned their property with intent to defraud fails entirely. There is no evidence that defendants were about to assign with intent to defraud. The defendants had been negotiating for a sale of their business, but had not been successful. One defendant declined to pay plaintiffs, and thus to give them a preference over other creditors; he declined to promise to pay them out of the avails if they should sell; he declined to make a general assignment *pro rata*. In all this there was no evidence of intent to defraud. Defendants had a right within the statutory limit to make preferences. It was not fraudulent for one of the defendants to refuse to promise to assign *pro rata*.

The plain case is this: The defendants were badly embarrassed.

They had ineffectually tried to sell out their business. They owed largely certain banks in Troy. They were not ready to say what steps they would take in disposing of their property among their creditors. The plaintiffs wished to get a preference and they sought to do this by entangling defendants in their talk; by asking for promises and for payment; by sending a former employee of defendants to estimate the stock; and then by making an affidavit as to their own beliefs and suspicions. Attachments are not to be granted on beliefs and suspicions. They operate to give an advantage to one creditor over others. And some wrongful act, or the evident intent to do some wrongful act, must be shown to justify them. We must not overlook the phrase " with intent to defraud his creditors." That is the gist of the allegation; and this intent must be shown by evidence. We see nothing in these papers which shows any such intent in regard to transfers made, or transfers about to be made. In fact, the only transfer in prospect was one to Patton for $10,000, and there is not the slightest allegation that this was not a fair price, or that Patton was not responsible. If the defendant had promised to pay plaintiffs their debt of over $7,000 out of this $10,000 (as they asked him) he would have been promising a preference beyond that allowed on a general assignment.

Of course, it is natural that the plaintiffs should wish to be paid, and that they should desire, if they can, to get a preference over other creditors. But when such preference can only be had by showing an actual or expected transfer with intent to defraud creditors, courts should be careful to see that the evidence clearly shows that such fraudulent intent really existed in the mind of the defendants, and not merely in the ingenuity of the plaintiffs.

A point is made that this order is not appealable because it is said to be *ex parte*. This is a mistake. The order was made on defendants' motion, and on hearing plaintiffs' counsel in opposition. It is of no consequence on this appeal whether the parties appeared voluntarily or on a formal notice. Indeed, it does not affirmatively appear on the papers that there was not a regular notice. Nor was it necessary that this should appear on the papers. It is enough that the order shows that both parties were heard on the motion to vacate the attachment. As that was the case, the order denying the motion was not *ex parte*, and is appealable.

We have examined the affidavits carefully, though we have not set forth all the allegations at length, and we are satisfied that there was not such evidence as justified the attachment.

Order reversed, with ten dollars costs and printing disbursements, and motion to vacate granted, with ten dollars costs.

LANDON and MAYHAM, JJ., concurred.

So ordered.