ATLAS FURNITURE COMPANY, Respondent, *v.* GEORGE P. FREEMAN and JOHN W. CHESEBRO, Appellants.

*Attachment on the ground that the defendant is about to assign his property with intent to defraud creditors — false statement of solvency — threat to make an assignment preferring other creditors.*

A warrant of attachment against property will not be issued upon a mere suspicion ; the intent to do the wrongful act, relied on as the ground of the attachment, must appear from the facts disclosed by the affidavit.

The making, even dishonestly, of a false statement of solvency by a debtor to a creditor, upon which an extension of credit is obtained, followed by a threat to make an assignment preferring other creditors, is not proof that the defendant is about to assign his property with a fraudulent intent.

Nor is a threat to make an assignment, giving preferences to other creditors, which would cover all the debtor's property, made proof of the fraudulent intent by reason of the statutory limitation upon the payment of preferred claims under assignments.

The affidavit for an attachment stated in effect, that on a certain date the defendants, who were partners, being then indebted to the plaintiff, falsely stated that they were solvent, making money and able to pay their debts if time was given; upon this statement they obtained from the plaintiff an extension of credit; one month thereafter they wrote to the plaintiff announcing their insolvency and inability to pay their debts in full; when questioned in reference to their prior statement of solvency, one of the defendants stated that they had not at that time completed their inventory and did not know how their matters stood, and said further that if the plaintiff undertook to collect its claim by suit it would get substantially nothing, for they would make an assignment preferring the claim of their landlord for rent. A warrant of attachment was issued, upon the ground that the defendants were about to assign, dispose of or secrete their property with intent to defraud their creditors.

*Held,* that the affidavit was insufficient and that the attachment must be vacated. *Anthony* v. *Stype* (19 Hun, 265), distinguished.

APPEAL by the defendants, George P. Freeman and John W. Chesebro, from an order made at a Special Term of the Supreme Court, and entered in the office of the clerk of Chautauqua county on the 14th day of April, 1893, denying the defendants' motion to vacate an attachment.

*F. A. Burnham* and *Norris Morey*, for the appellants.

*A. C. Wade*, for the respondent.

HAIGHT, J. :

The affidavit upon which the warrant was issued shows that the plaintiff was located in Jamestown, N. Y., and the defendants in the city of New York; that the defendants were indebted to the plaintiff in the sum of $1,715; that upon the tenth day of February a payment was made thereon, reducing the same to the sum of $1,433.29; that for that sum, notes of the defendants were accepted and an extension of time given for the payment thereof upon the representation as stated in the affidavit that the defendants were perfectly solvent and able to pay their debts; that they had taken an inventory which showed that their business had been profitable and they had been making money, and that if they could secure the further time in which to pay their indebtedness it would be a great accommodation to them. Thereafter and on the 9th day of March, 1893, the defendants wrote the plaintiff as follows : " On completing our inventory we find that we have lost a considerable sum of money during the past year, due in a great measure to the enormous expense of the building which we have been occupying. The rent provided for in the lease of this building amounted to $5,400 a year and the lease has four years to run from the first of May. With this lease on our hands we should be immediately compelled to suspend and to turn our property over to an assignee for division among our creditors. We have, however, after considerable difficulty, convinced the landlord of the premises that it is for his best interest to cancel this lease and to terminate it on the first of May next. But our losses have been so great that even this relief will not place us in a position to meet our obligations in full. Our Mr. Freeman started west on the 7th inst., to confer with our largest creditors, and we hope within a very few days to submit to you and the rest of our creditors a proposition of compromise which will be acceptable to you. In the meantime rest assured that our only desire will be to protect the interests of all our creditors and that no one will be permitted to gain an advantage over another."

Upon the receipt of this letter, the secretary of the plaintiff visited New York, and on the fifteenth day of March called upon the defendants and saw the defendant Chesebro, and was informed by him that the defendant Freeman had gone west; that they had been losing money for quite a long time; that they had their inventory

completed, and that they could not pay to exceed forty cents on the dollar on their indebtedness; that Freeman was out trying to get a compromise with their creditors, and on being asked by the secretary of the plaintiff why they had informed him on the tenth of February that their inventory was completed and that they were doing a prosperous business, he replied that they did not then have it completed, and that they did not then know just how their matters did stand. The defendant Chesebro further stated " That if the plaintiff undertook to collect its claim by suit, it would get substantially nothing on it, for if the plaintiff commenced suit, the defendants would make an assignment preferring their landlord, and the plaintiff would get nothing." He also stated " That his partner, Freeman, when he left home, had left with him, said defendant Chesebro, a power of attorney authorizing him to make such a general assignment in behalf of the firm at any time, if he, Freeman, should telegraph him to do so." He further stated in substance " That the plaintiff had better keep still and do nothing, as it would get nothing if it attempted to enforce the collection of its claim."

The warrant of attachment was issued upon the ground that the defendants were about to assign, dispose of or secrete their property with the intent to defraud their creditors.

Does the matter stated in the affidavit show such intent? We think not. It may, perhaps, be sufficient to create a suspicion that such disposition of their property was intended, but a warrant of attachment will not issue upon a mere suspicion. The intent to do the wrongful act must appear from the facts disclosed by the affidavit. (*Thompson* v. *Dater*, 57 Hun, 316.)

On the tenth of February, the defendants falsely stated that they were solvent, making money and were able to pay their debts if time was given. Upon this statement, they obtained from the plaintiff an extension of credit. One month thereafter, they wrote the plaintiff announcing their insolvency and their inability to pay their debts in full. When questioned in reference to their statement of February tenth, the defendant Chesebro stated that they had not at that time completed their inventory, and did not then know how their matters stood. The defendants, in making the representations upon which an extension of time was procured, may have been dishonest and they may not. Possibly, they at that time supposed

themselves solvent and able to pay. But whether the representations were made innocently or dishonestly is unimportant, for in either case they do not establish a fraudulent intent to assign, dispose of or secrete their property. (*Johnson* v. *Buckel*, 65 Hun, 601; *Kibbe* v. *Herman*, 51 id. 438; *Fleitmann* v. *Sickle*, 13 N. Y. St. Repr. 399.)

The further facts disclosed by the affidavit are in substance that if the plaintiff undertook to collect its claim by suit that it would get substantially nothing, for the defendants would make an assignment preferring the claim of their landlord. This they had the right to do; and the doing of that which is lawful is not fraudulent. (*Farwell* v. *Furniss*, 67 How. Pr. 188; *Hallenbeck* v. *Coenen*, 34 N. Y. St. Repr. 689; *Stamp* v. *Herpich*, 8 id. 446; *Evans* v. *Warner*, 21 Hun, 574.)

But it is claimed that the false representations made by the defendants in order to procure an extension of time within which to pay the plaintiff's claim characterizes the threats subsequently made that they would make an assignment and indicated a fraudulent intent. Such representations were made in the case of *Stamp* v. *Herpich* (*supra*). But, notwithstanding, it was held that the threat to make an assignment with preference to others was not fraudulent under the law.

Again, it is claimed that under the statute as it now stands a preference cannot be made of all of the assignor's property. Very true, claims cannot be preferred to a greater extent than one-third of the assigned assets after paying the expenses of the assignment and the wages and salaries due employees. But the statute limiting the amount to be paid on preferences is addressed to the assignee, and prevents him from paying more than that portion of the assets upon the preferred claims. And it is not apparent how this provision changes the effect of the threat that was made to make an assignment.

The case of *Anthony* v. *Stype* (19 Hun, 265), is distinguishable. In that case the affidavits upon which the warrant was issued showed that he kept his store open, continued to dispose of his goods and to appropriate the proceeds thereof to other purposes than to the payment of his debts, refusing to pay anything either in goods or money to his creditors.

The order should be reversed, with ten dollars costs and disbursements, and the motion to vacate the attachment granted.

LEWIS and BRADLEY, JJ., concurred.

Order reversed, with ten dollars costs and disbursements, and motion to vacate the attachment granted.